USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND; TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS RELIEF AND CHARITY FUND; and THE NEW YORK CITY AND VICINITY CARPENTERS LABOR-MANAGEMENT CORPORATION,

     Plaintiffs,

v.

SHORECON-NY, INC.,

     Defendant.

No. 17-CV-5210 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

  Plaintiffs Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educational and Industry Funds (the "ERISA Funds"), Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund"), and New York City and Vicinity Carpenters Labor-Management Corporation (collectively, the "Funds") have moved pursuant to Federal Rule of Civil Procedure 55 for a default judgment against Defendant Shorecon-NY, Inc. ("Shorecon"). For the reasons set forth below, the motion is granted.

## BACKGROUND

  The Court assumes the parties' familiarity with the facts and procedural history of this case. Therefore, only what is relevant to this Opinion is set forth below.

The Funds are the employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to a number of collective bargaining agreements in accordance with section 302 of the Labor Management Relations Act, 29 U.S.C. § 186(c). In 2015, Shorecon executed a "Project Labor Agreement - Letter of Assent" (the "PLA") to work on the "Build It Back Queens" Project (the "Project"). *See* Dkt. 54, Ex. A (PLA). This bound Shorecon – at all relevant times – to a collective bargaining agreement ("CBA") with the New York City District Council of Carpenters (the "Union") and to the Funds' Collection Policy. *See* Dkt. 54, Ex F (CBA); Dkt. 54, Ex. G (Collection Policy).

Pursuant to its obligations under the CBA, Shorecon was required to remit contributions to the Funds for all work performed within the trade and geographical jurisdiction of the Union and to abide by particular policies and regulations adopted by the Funds. *See* Dkt. 54, Ex. F, Art. XII § 1. To ensure compliance with its contribution obligations, the CBA and Collection Policy permitted the Funds to audit Shorecon. *See* Dkt. 54, Ex. F. Art. XII § 9; Dkt. 54, Ex. G § IV. This, in particular, allowed the Funds to demand access to Shorecon's books and records. *See id.* In the event that the Funds commenced proceedings to recover delinquent contributions, the CBA and Collection Policy granted them the right to interest and liquidated damages, as well as attorneys' fees and costs expended in the collection effort. *See* Dkt. 54, Ex. F, Art. XII § 8(f); Dkt. 54, Ex. G, Art. IV § 11.

In July 2017, after learning that Shorecon failed to remit contributions to the Fund in connection with the Project, Plaintiffs filed this against Shorecon and co-Defendant Washington International Insurance Company, the surety which had issued the payment bond on the Project, to recover unpaid contributions. On August 8, 2017, Washington International Insurance

Company filed its answer. Dkt. 12. Although Shorecon had been served with the summons and complaint, *see* Dkt. 9, it did not appear.

Nonetheless, after the action was filed, Shorecon agreed to an audit of its contributions for the period covering December 26, 2016 through March 26, 2017. *See* Pls.' Mot. at 3; Dkt. 55 ¶ 10 (Decl. of Blaise). That audit revealed that Shorecon owed the Funds $25,646.99 for its work on the Project (the "Audit Delinquencies"). The Audit Delinquencies consisted of (1) a principal amount of $16,649.29; (2) interest thereon of of $2,267.84; (3) promotional fund contributions of $145.65; (4) audit costs of $3,400, and (5) liquidated damages of $3,329.86. *See* Dkt. 55 ¶ 10. The auditor also reviewed certified payroll records to determine if Shorecon had failed to remit other contributions to the Funds in connection with the Project and concluded that an additional $13,633 in contributions were due (the "Non-Audit Delinquencies"). *See id.* ¶ 11. Washington International Insurance Company paid the principal amount and interest owed for the Audit and Non-Audit Delinquencies, as well as the promotional fund contributions. On November 8, 2019, Plaintiffs dismissed their claims against Washington Insurance Company. Dkt. 48. However, Plaintiffs continued the action against Shorecon, seeking $53,737.64 for the unpaid audit costs, liquidated damages, and attorneys' fees and costs incurred in bringing this action. *See id.* ¶ 13. Yet, Shorecon still did not appear.

On January 22, 2020, the Clerk of Court issued a certificate of default against Shorecon. Dkt. 51. On March 10, Plaintiffs filed the instant motion for a default judgment against Shorecon. Dkt. 53. On March 11, the Court ordered Shorecon to show cause at a conference on April 15 as to why a default judgment should not be entered against it in favor of Plaintiffs. Dkt. 61. However, on April 2, "[i]n light of the COVID-19 crisis," the Court adjourned the show cause hearing and stated that it would resolve this matter on the papers. Dkt. 63. Because of this

change, the Court extended Shorecon's time to file and serve answering papers to May 4, warning that "judgment will be entered for Plaintiffs . . . [i]f Defendant fails to respond by May 4, 2020 or fails to request an extension to do so." *Id.* Plaintiffs were ordered to serve a copy of the April 2nd Order. *Id.* Shortly thereafter, Plaintiffs requested an extension to do so, explaining that they had "served a copy of the Order on Shorecon via first-class mail and filed a certificate of service" but the mail was returned to them. Dkt. 65. Based on Plaintiffs' assurance that it would "serv[e] Shorecon at an alternative address," the Court granted Plaintiffs' request and extended Shorecon's time to file and serve answering papers to June 19. Dkt. 66. On May 20, Plaintiffs filed certificates of service, stating that the April 2nd and May 19th Orders had been served on Defendant by first-class mail. Dkt. 67, 68. Shorecon did not respond.

## LEGAL STANDARD

Under Rule 55, a court may – on a plaintiff's motion – enter a default judgment against a defendant who "has failed to plead or otherwise defend" itself in an action brought against it. Fed. R. Civ. P. 55(a). In particular, "the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Generally speaking, "a default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

## DISCUSSION

### I. Service

It is axiomatic that "[a] default judgment may not be granted . . . if the defendant has not been effectively served with process." *Doe v. Alsaud*, 12 F. Supp. 3d 684, 687 (S.D.N.Y. 2014);

*see also Aspex Eyewear, Inc. v. Cheuk Ho Optical Int'l Ltd.*, Nos. 00-CV-2389, 01-CV-1315 (RMB), 2005 WL 3501900, at *1 (S.D.N.Y. Dec. 21, 2005) ("A default judgment 'obtained by way of defective service is void *ab initio* and must be set aside as a matter of law.'" (citation omitted)). The burden is on the plaintiff to prove that service was adequate. *See Alsaud*, 12 F. Supp. 3d at 687.

Here, Plaintiffs have demonstrated that they adequately served Shorecon. First, on July 13, 2017, Plaintiffs personally served Shorecon with the summons and complaint "at the office of the New York State Secretary of State" by "leaving the papers with Sue Zouky," who is "an authorized person in the Corporation Division of the Department of State and empowered to receive such service" pursuant to New York Business Corporation Law § 306. Dkt. 7 (July 19, 2017 Affidavit of Service); *see also Reilly v. Commerce*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *3 (S.D.N.Y. Oct. 31, 2016) (explaining that under New York Business Corporation Law § 306, "[s]ervice is complete when the Secretary of State is 'so served'; there is no mailing or other follow-up requirement"). This method of service complies with Federal Rule of Civil Procedure 4, which permits a plaintiff to serve "a domestic or foreign corporation, or a partnership, or other unincorporated association that is subject to suit under a common name" by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A); *see also Sheldon v. Plot Commerce*, No. 15-CV-5585, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016) ("[S]ervice under Rule 4 may also be deemed proper if plaintiff has complied with New York law[.]"). Accordingly, pursuant to Rule 4, Plaintiffs adequately served Shorecon with the summons and complaint.

Next, Plaintiffs also properly served their motion for default judgment. On March 12, Plaintiffs personally served the motion, supporting papers, and the Court's March 11th Order, which scheduled a show cause hearing, by leaving copies of these papers with Amy Lesch, another "authorized person . . . to receive such service" at the office of the New York State Secretary of State.[1] Dkt. 62 (Mar. 16, 2020 Affidavit of Service).

Finally, Plaintiffs also properly served the Court's more recent orders. On April 2, 2020, the Court filed an amended order, adjourning the show cause hearing and stating that it would resolve this motion on the papers. Dkt. 63. In that same order, the Court extended Shorecon's time to respond to May 4, warning that a failure to respond or request an extension would result in a judgment entered for Plaintiffs *Id*. Although Plaintiffs initially had trouble serving this Order, it notified the Court and requested additional time to serve Defendant and for Defendant to respond to the motion. *See* Dkt. 65. The Court granted this request, extending Defendant's time to respond to the motion to June 19. *See* Dkt. 66. On May 20, Plaintiffs filed proof of service by first-class mail of the Court's April 2nd and May 18th Orders. Dkt. 67, 68 (May 20, 2020 Certificates of Service). Plaintiffs' service of these recent orders complies with Federal Rule of Civil Procedure 5, which governs filings made after an action has commenced and permits "mailing [orders] to the person's last known address – in which event service is complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C). As such, Plaintiffs have shown that they also properly served Shorecon with its motion for default judgment, supporting papers, and the Court's subsequent orders.

---

[1] Before the Court issued its March 11, 2020 Order, Plaintiffs also served the motion for default judgment and supporting papers by certified mail. Dkt. 60 (Mar. 11, 2020 Affidavit of Service).

**II.     Liability**

The Court next turns to whether – accepting Plaintiffs' factual allegations as true – Shorecon's liability is established as a matter of law.  *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund*, 779 F.3d at 187.  Although the complaint includes several causes of action, here Plaintiffs seek to establish Shorecon's liability only under section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1145.  *See* Pls.' Mot. 4-6.  Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Upon a finding that an employer has violated its obligation, a judgment may be entered against that employer in the amount of delinquent contributions, plus interest and liquidated damages as prescribed by the governing documents.  *See* 29 U.S.C. § 1132(g)(2).

Here, Shorecon agreed to be bound to the CBA, *see* Dkt. 54, Ex. A (PLA), and thus to make contributions to the Funds, *see* Dkt. 54, Ex. F (CBA).  Based on records furnished by Shorecon, an audit was conducted, which established that Shorecon owed $25,646.99 in Audit Delinquencies and $13,633 in Non-Audit Deficiencies.  *See* Dkt. 55 ¶¶ 10-11.  Although Washington International Insurance Company paid some of this, a portion – which Shorecon is liable for – remains due.  Based on the record provided and in light of Shorecon's failure to appear in this action, Plaintiffs have sufficiently established Shorecon's liability under ERISA for failing to remit contributions.  *See Ferrara v. PJF Trucking LLC*, No. 13-CV-7191, 2014 WL 4725494, at *5 (E.D.N.Y. Sept. 22, 2014) ("A default constitutes an admission of well-pleaded

factual allegations in the complaint and the allegations as they pertain to liability are deemed true."). Plaintiffs' motion for default judgment is thus granted.

## III. Damages

Finally, the Court turns to Plaintiffs' request for damages. Plaintiffs seek $53,737.64 in damages against Shorecon, which accounts for (1) $6,031.83 in total liquidated damages – $3,329.86 for the Audit Deficiencies and $2,701.97 for the Non-Audit Deficiencies, (2) $3,400 in audit costs, (3) $43,608.50 in attorneys' fees incurred in bringing this action, and (4) $697.31 for costs incurred in bringing this action, as well post-judgment interest at the statutory rate. *See* Pls.' Mot. at 6-11. Based on Plaintiffs' submissions, there is a sufficient basis to determine damages on the papers and an evidentiary hearing is unnecessary. *See William Mark Corp. v. 1&CC et al.*, No. 18-CV-3889 (RA), 2019 WL 4195365, at *2 n.5 (S.D.N.Y. May 20, 2019) ("An inquest into damages may be conducted 'on the papers,' without an evidentiary hearing where there is a sufficient basis on which to make a calculation.").

### A. Liquidated Damages

Plaintiffs first request $6,031.83 in liquidated damages – that is, $3,329.86 based on the Audit Deficiencies and $2,701.97 based on the Non-Audit Deficiencies. *See* Pls.' Mot. at 6-7. The CBA states that "[i]n the event the Employer fails to make contributions to the Fringe Benefit Funds as specified in Article XII Section 1 herein, the Employer shall be obligated to pay to said Fringe Benefit Funds as liquidated damages as provided for in the Agreement and Declaration of Trust establishing such Fund." Dkt. 54, Ex. F, Art. XII § 8. The CBA further specifies that liquidated damages should be calculated in the amount of twenty percent of the principal amount of all delinquent contributions. *See* Dkt. 54, Ex. G § 5. Plaintiffs are,

therefore, entitled to $3,329.86 and $2,701.97 – twenty percent of the Audit and Non-Audit Deficiencies, respectively – and $6,031.83 in total for liquidated damages.

### B. Audit Costs

Plaintiffs also request $3,400 in audit costs, which was the amount billed by the outside audit firm. *See* Pls.' Mot. at 7. The Collection Policy, to which Shorecon was bound, provides that:

> The employer shall be required to pay the cost of a payroll review and/or audit if the payroll review and/or audit discloses an underpayment of contributions to the Funds totaling at least two (2) percent of the employer's total payroll for covered employees for the payroll review and/or audit period at issue, or underpayment of contributions totality at least $10,000, which is less. However, whenever the collection of underpayments found in a payroll review and/or audit proceeds to arbitration or litigation, the employer shall pay all payroll review and/or audit costs without regard to the preceding sentence.

Dkt. 54, Ex. G § IV; *see also id.* § V ("All recoverable costs actually incurred in court or other legal actions for the collection of delinquent contributions or to enforce the Funds' right to conduct a payroll review and/or audit of the employer's records as well as the costs expended in conducting any payroll review(s) and/or audit(s) shall be assessed against the delinquent employer[.]"). Because Plaintiffs commenced this action to recoup delinquent contributions, the Collection Policy provides that Shorecon must pay the audit costs – here, $3,400.

### C. Attorneys' Fees & Costs

Plaintiffs also request $43,608.50 in attorneys' fees and $697.31 in costs incurred in bringing this action. Here, both ERISA and the relevant governing documents – the CBA and the Collection Policy – permit Plaintiffs to recover attorneys' fees. ERISA provides that, "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. §

9

1132(g). Courts have, therefore, concluded that awarding attorney's fees and costs is mandatory when – as is the case here – an ERISA-covered fund is forced to initiate an action against an employer to recoup delinquent contributions. *See, e.g.*, *N.Y. State Teamsters Conference Pension & Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127, 135 (2d Cir. 1996) ("As is apparent from the statutory text, an award of attorney fees and costs is . . . mandatory under subsection (2), of section 1132(g)."). Because Plaintiffs brought this action to recover Shorecon's delinquent contributions under ERISA, Plaintiffs have established that they are entitled to reasonable attorneys' fees and costs.[2]

Although Plaintiffs are entitled to attorneys' fees, an inquiry into what is a reasonable amount is necessary. Petitioners' counsel submitted contemporaneous records, reflecting the time spent and activities performed in litigating this matter. *See* Dkt. 55, Ex. M (Attorneys' Billing History). In total, counsel billed $43,608.50 for 181 hours of work. *See id*. Specifically, counsel billed the time of (1) Todd Dickerson, formerly "Of Counsel," who graduated from law school in 2013, at a rate of $300 per hour prior to January 1, 2018 and $350 per hour as of January 1, 2018, Dkt. 55 ¶ 18; (2) Nicole Marimon, a partner, who graduated from law school in 2014, at a rate of $275 per hour prior to January 1, 2020 and $350 per hour as of January 1, 2020, *id*. ¶ 17; (3) Marlie Blaise, an associate, who graduated from law school in 2018, at rate of $275 per hour; *id*. ¶ 16; (4) Julie Dabrowski, an associate, who graduated from law school in 2014, at a rate of $225 per hour prior to January 1, 2018 and $275 per hour as of January 1, 2018, *id*. ¶ 19; (5) Claire Vinyard, an associate, who graduated from law school in 2014, at a rate of $225 per hour, *id*. ¶ 20; and (6) legal assistants, at a rate of $100 per hour prior

---

[2] Plaintiffs are also entitled to attorneys' fees and costs based on the Collection Policy, which provides for recovery of this amount "at the same hourly rate charged to the Funds for such services . . . for all time spent by [the Funds' counsel] in collection efforts[.]" Dkt. 54, Ex. G § V.

10

to January 1, 2018 and $120 per hour as of January 1, 2018, *id.* ¶ 21.  With respect to the amount of hours billed, the Court has examined the submitted invoice and finds that the hours expended were reasonable.  *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. Metroplex Serv. Grp., Inc.*, No. 18-CV-5889 (PAE), 2018 WL 4141034, at *6 (S.D.N.Y. Aug. 30, 2018) (explaining that an invoice "reflects sound billing practices" when "[i]t is thorough, detailed, relevant, and easy to understand, with no evident duplication of effort").

Plaintiffs assert that "[a]ll of the above-referenced rates are the results of negotiations between [the law firm] and the Funds regarding the proper hour rates to compensate [the law firm's] attorneys and legal assistants for their services."  Dkt. 55 ¶ 22.  In their motion, Plaintiffs further explain that "[t]hese rates were negotiated with a Board of Trustees consisting of members with long business and negotiation experience and, as such, should be viewed as rates that a reasonable client would pay."  Pls.' Mot. at 10.  Nonetheless, this Court, as well as others in this district, has recently considered what constitutes reasonable rates for these lawyers and approved somewhat lower rates than those proposed here.  The Court will therefore reduce the rates for several of Plaintiffs' attorneys – albeit, only marginally.

First, regarding Mr. Dickerson, he has requested a rate of $300 per hour for work performed prior to January 1, 2018 and $350 per hour for his work as of January 1, 2018.  Courts in this circuit – including this Court – have previously declined Mr. Dickerson's request for a rate of $350 per hour.  *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. S&S Kings Corp.*, No. 19-CV-1052 (RA), 2019 WL 4412705, at *5 (S.D.N.Y. Sept. 16, 2019) (reducing Mr. Dickerson's requested rate to $300 per hour); *Trs. of N.Y.C. Dist. Council of*

*Carpenters Pension Fund, Welfare Fund, Annuity Fund & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. J.H. Reid. Gen. Contractor*, No. 18-CV-11342 (AT), 2019 WL 1409805, at *3 (S.D.N.Y. Mar. 27, 2019) (granting Mr. Dickerson "a rate of $300 per hour" because "[o]ther courts in this district have found $350 per hour to be an unreasonable rate for Dickerson"). Because Mr. Dickerson has offered no reason for the Court to stray from the conclusion it reached not long ago, it reduces the rate at which his fees should be calculated to $300 per hour for his work performed as of January 1, 2018.

Second, regarding Ms. Marimon's work, the Court grants her request for a rate of $275 per hour prior to January 1, 2020. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Skyeco Grp. LLC*, No. 19-CV-7608 (LGS), 2019 WL 6497533, at *3 (S.D.N.Y. Dec. 3, 2019) (awarding attorney's fees to Ms. Marimon at a rate of $275 per hour rate). The Court, however, declines to grant her request for $350 per hour as of January 1, 2020. Courts in this circuit have generally held that $300 per hour is a reasonable rate for partners engaging in the work done here. *See Trs. of N.E. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Cooperation Funds v. Excel Installations, LLC*, No. 19-CV-3012, 2020 WL 429135, at *5 (E.D.N.Y. Jan. 27, 2020) (granting Ms. Marimon's request for attorney's fees at a rate of $300 per hour because it "seems reasonable given her position as partner"); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund et al. v. Earth Constr. Corp.*, No. 19-CV-5411 (ALC), 2020 WL 614740, at *3 (S.D.N.Y. Feb. 10, 2020) (noting that a rate of $300 per hour for a partner is "reasonable and analogous to the amounts granted by courts in this district"). Indeed, only several months ago, this Court declined to grant Ms. Marimon's request for a rate of $350 per hour. *See Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity*

*Fun & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. Triangle Enter. NYC, Inc.*, No. 20-CV-793 (RA), 2020 WL 2306484, at *5 (S.D.N.Y. May 8, 2020) (noting, in rejecting Mr. Marimon's request for $350 per hour, that "Ms. Marimon was requesting a rate of $275 per hour for work performed only two to three months earlier"). For these reasons, the Court concludes that a rate of $300 per hour is more appropriate for Ms. Marimon's work performed as of January 1, 2020, and her fees should thus be calculated at a rate of $275 per hour prior to January 1, 2020 and a rate of $300 per hour as of January 1, 2020.

Third, regarding the work of Ms. Blaise and Ms. Dabrowski, both associates at the law firm, the Court declines to approve their requested rate of $275 per hour. Other courts in this district have "recently found these rates unreasonable, and concluded that $225 per hour was an appropriate rate" for associates with similarly limited experience. *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Metro. Exposition Servs., Inc.*, No. 19-CV-149 (AJN), 2019 WL 2004279, at *4 (S.D.N.Y. May 7, 2019) ("Courts within the district have recently . . . concluded that $225 per hour was an appropriate rate for [an associate] and associates with her experience[.]"); *see also, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus Fund et al. v. DV I, LLC*, No. 17-CV-7367 (PAE), 2018 WL 461244, at *5 (S.D.N.Y. Jan. 18, 2018) (holding that $225 per hour is the appropriate rate for an associate who is "similarly situated [to other] associates"). Moreover, it is notable that Plaintiffs have not sought a rate of $275 per hour for Ms. Vinyard, another associate with similar experience who worked on this litigation. Therefore, both Ms. Blaise's and Ms. Dabrowski's fees in connection with this litigation are to be calculated at a rate of $225 per hour.

In sum, the Court grants the request for attorneys' fees, but slightly reduces the proposed billing rates of Mr. Dickerson, Ms. Marimon, Ms. Blaise, and Ms. Dabrowski.  Because the billing records are extensive and the reduced rates significantly alter Plaintiffs' requested attorneys' fees, counsel is ordered to submit a revised proposal for fees incurred in this action. These fees should be calculated based on the rates provided above.

Lastly, Plaintiffs' request for $697.30 in costs and expenses incurred in litigating this action, including the filing fee, service fees, and subpoena fee, is granted.  Dkt. 57 (Statement of Damages); *see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund et al. v. Jessica Rose Enters. Corp.*, No. 15-CV-9040 (RA), 2016 WL 6952345, at *5 (S.D.N.Y. Nov. 28, 2016) (finding submitted costs for service fees and court filing fees to be "standard costs paid in actions brought in this Court" and thus reasonable).

### D.  Post-Judgment Interest

Finally, Plaintiffs seek post-judgment interest at a statutory rate.  *See* Pls.' Mot. at 11-12. 28 U.S.C. § 1961(a) mandates postjudgment interest "on awards in civil cases as of the date judgment is entered."  *See also N.Y.C. Dist. Council of Carpenters v. Tried N True Interiors LLC*, No.2 20-CV-51 (LGS), 2020 WL 1809323, at *4 (S.D.N.Y. Apr. 9, 2020) (Section 1961 applies to actions to confirm arbitration.").  The Court, therefore, grants postjudgment interest to "be calculated from the date of the entry of the judgment."  28 U.S.C. § 1961(a).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is granted. As to damages, Plaintiffs' request for $6,031.83 in liquidated damages, $3,400 in audit costs, $697.30 in costs incurred in litigating this action, as well as post-judgment interest, are granted. Although Plaintiffs are also entitled to attorneys' fees incurred in bringing this action, that amount is modified based on the marginally reduced rates discussed above.

No later than **July 27, 2020**, Plaintiff shall submit a revised request for attorneys' fees. With those papers, Plaintiffs shall submit a revised proposed order for default judgment. After the Court receives and reviews those papers, it will direct the Clerk of Court to enter a default judgment and close this case.

Dated:   July 13, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge